# IN THE COURT OF APPEALS OF IOWA

No. 21-0033
Filed May 26, 2021

**IN THE INTEREST OF I.C.,**
**Minor Child,**

**R.C., Father,**
  Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A father appeals the termination of his parental rights to a daughter.

**AFFIRMED.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Mary Baird Krafka, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A father, Russell, appeals the termination of his parental rights to a daughter, I.C. His only argument is that ending their legal relationship diverges from I.C.'s best interests. When the juvenile court heard evidence, Russell was in jail awaiting trial on charges of sexual assault and incest against I.C., as well as sexual assault and child endangerment of her older half-brother, I.F. Plus, the record shows Russell has a history of criminality and drug addiction. These facts compel the conclusion that termination of his parental rights serves I.C.'s best interests. So we affirm.[1]

This family's involvement with the Iowa Department of Human Services (DHS) began in July 2019, when workers received reports that I.F. suffered physical abuse. His mother, Danielle, was living with the alleged perpetrator. An investigation revealed Russell was also staying with Danielle and the two children. Because Russell is a registered sex offender,[2] he was violating the law by living with I.F., who is not his child.

Danielle and the children moved. But the DHS returned the next month on reports that Russell was back in their home. When interviewed, I.F. disclosed that Russell sexually abused him. I.F. also said Russell shot him with a BB gun as a form of discipline. I.F. reported that he told his mother about the abuse, but she

---

[1] "We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* Our key consideration is the child's best interests. *Id.*

[2] Russell's criminal history before these incidents includes four convictions for domestic abuse assault, two violations of sex offender registry requirements, two convictions for drug paraphernalia, and a conviction for third-degree sexual abuse.

did nothing. A child-abuse assessment recorded a founded allegation of physical abuse by Russell against I.F. At that time, I.C. did not disclose that she had been abused.

The DHS removed the children from the parents in August 2019, and they have not returned to their care.[3] Shortly after removal, I.C. tested positive for methamphetamine. Russell later admitted using methamphetamine and marijuana. Another child-abuse assessment logged founded allegations for the presence of illegal drugs. The State charged Russell with third-degree sexual abuse, child endangerment, and failure to register as a sex offender. He was arrested in October 2019 and remained in jail awaiting criminal trial through the termination proceedings.

But that was not the end of the allegations against Russell. In summer 2020, I.C. disclosed that Russell had sexually abused her. A new child-abuse assessment reached a founded allegation of sexual abuse in the second degree. So the State added criminal charges of sexual abuse, incest, and child endangerment. After I.C.'s disclosures, a no-contact order prevented Russell from having visitation. In fact, Russell did not participate in any services while in jail, other than medication management.

On the positive side, the foster parents were meeting I.C.'s physical and mental-health needs. But her physical condition was concerning. Medical professionals at the child protection center diagnosed I.C. with rickets, a condition related to the softening or weakening of the bones usually because of a vitamin D

---

[3] The DHS placed both I.C., and her half-brother, I.F., with I.F.'s paternal aunt and uncle, who had taken steps to become foster parents.

deficiency. Her poor growth requires special care. She also has several mental-health diagnoses, including post-traumatic stress disorder and autism spectrum disorder. The foster parents facilitate her visits with a therapist.

After assessing these circumstances, the State petitioned to terminate the parental rights of Russell and Danielle.[4] Following hearings in October 2020, the juvenile court terminated their rights under Iowa Code section 232.116(1), paragraphs (e) and (f) (2020). Only Russell appeals.[5]

Russell argues termination is not in I.C.'s best interests. He emphasizes that he "adamantly denied the allegations" and was in jail during the termination proceedings as he was "waiting for his day in court." He also asserts "[p]ermanently separating a father from his child due to his current incarceration is not in the child's long-term best interests, especially when there are other options to ensure the child's safety while reestablishing a relationship with her father upon his release." Russell does not elaborate on those other options.

In making the best-interests determination, we consider the child's safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

---

[4] One of the primary concerns in the child-in-need-of-assistance proceedings was Danielle's refusal to believe the children's sexual abuse allegations and her continuing defense of Russell.

[5] Danielle did not timely file her appeal, so she does not participate.

We find clear and convincing evidence that it is in I.C.'s best interests to terminate Russell's parental rights. Russell is a convicted sex offender. And several child-abuse assessments verified that he sexually and physically abused I.C. and her half-brother. Even beyond that, Russell has not shown he can be a safe parent for I.C. in the short- or long-term. For instance, he has not engaged in services while in jail. He has unresolved substance-abuse and domestic-violence issues. And he has failed to register as a sex offender. Termination is not only appropriate, but ensuring I.C.'s best interests compels this conclusion.

On the other side of the equation, I.C. is doing well in her placement. The foster parents are addressing her considerable physical- and mental-health needs. And they are interested in adopting her and I.F. The DHS social worker testified I.C. has bonded with the foster parents and is comfortable in their home. *See* Iowa Code § 232.116(2)(b). To that end, termination of Russell's parental rights will start the process toward a more stable and promising environment for I.C.'s future.

**AFFIRMED.**